**CITY OF DOUGLAS and Robert C. Savik-
ko, Appellants,**

v.

**CITY AND BOROUGH OF JUNEAU
et al., Appellees.**

No. 1379.

Supreme Court of Alaska.

March 1, 1971.

James L. Johnston, Anchorage, for ap-
pellants.

Theodore M. Pease, Jr., Richard A.
Helm, Burr, Pease & Kurtz, Anchorage,
for appellees.

Before BONEY, C. J., and RABINO-
WITZ, CONNOR and ERWIN, J.

OPINION

RABINOWITZ, Justice.

This appeal questions the constitution-
ality of Alaska statutes which provide a

method for unification of local government units.

Appellant City of Douglas instituted a declaratory judgment action in the superior court seeking a declaration that AS 29.85.-160(c), a portion of our statutes relating to unification of local government units, was violative of article X, section 9 of the Alaska Constitution, which establishes procedures for the adoption, amendment, or repeal of home rule charters.[1] Appellees moved to dismiss the action. The motion was granted and this appeal followed.

## CONSTITUTIONAL AND STATUTORY FRAMEWORK.

The purpose of the local government article of the Alaska Constitution is "to provide for maximum local self-government with a minimum of local government units, and to prevent duplication of tax-levying jurisdictions."[2] All local government powers are constitutionally vested in boroughs and cities, and only they may tax.[3] It is required that the entire state be divided into boroughs, but the details of the manner of their establishment, organization, and consolidation are left to the legislature.[4] It is further provided that cities are parts of the boroughs in which they are located, and the manner of consolidation and dissolution of the cities is left to the legislature.[5]

Turning to the statutory framework, the legislature has provided that an organized borough and all cities within it may unify into a single unit of home rule local government by following a prescribed procedure.[6] Unification must be proposed by a petition for a referendum.[7] The borough assembly then submits to the voters the questions of whether the borough and its cities should be unified, what the unified entity should be called, and who should serve on the charter commission.[8] Unification requires a majority of votes in the first class and home rule cities of the borough taken together, as well as a majority of the votes in the remainder of the borough.[9] In the event unification is approved, the charter commission elected at the same time prepares and proposes a home rule charter for the unified entity.[10] An election is then held on the proposed charter; ratification requires concurrent majorities in the first class and home rule cities taken together, and in the remainder of the borough.[11] If the charter is rejected, the charter commission proposes another, and if the second proposed charter is rejected, the unification process terminates.[12] If the charter is ratified, it dissolves all pre-existing local governments in the unified area.[13]

The City of Douglas was duly organized as a first class city under a home rule charter within the Greater Juneau Borough. At an election in February 1970, the voters in the borough ratified a charter pursuant to AS 29.85.160(c), purportedly unifying the City and Borough of Juneau and dissolving the City of Douglas as of July 1, 1970. A majority of the votes cast in the City of Douglas opposed ratification. Nevertheless, the charter was ratified under AS 29.85.160(c), because the favorable vote in the City of Juneau outweighed the negative vote in Douglas,

1. In its declaratory judgment action, the City of Douglas also asked the trial court to declare that the charter adopted as a result of the culmination of the unification proceedings was void and for an injunction restraining appellees "from doing any thing inconsistent with the City of Douglas' continued existence as a validly organized home rule city."

2. Alaska Const. art. X, § 1.

3. *Id.* § 2.

4. *Id.* § 3.

5. *Id.* at § 7.

6. AS 29:85.010–AS 29.85.210.

7. AS 29.85.020, AS 29.85.030.

8. AS 29.85.090.

9. AS 29.85.100(a).

10. AS 29.85.120.

11. AS 29.85.160(c).

12. AS 29.85.160(d).

13. AS 29.85.170.

their votes being counted together in the category of "remaining area of the Borough, composed of all first class and home rule cities."[14]

## CONSTITUTIONALITY OF AS 29.85.-160(c).

The main thrust of appellants' contentions in this appeal is that AS 29.85.160(c) violates article X, section 9 of the Alaska Constitution. That constitutional provision says:

> The qualified voters of any borough of the first class or city of the first class may adopt, amend, or repeal a home rule charter in a manner provided by law. In the absence of such legislation, the governing body of a borough or city of the first class shall provide the procedure for the preparation and adoption or rejection of the charter. All charters, or parts or amendments of charters, shall be submitted to the qualified voters of the borough or city, and shall become effective if approved by a majority of those who vote on the specific question.

Appellants' theory is that this provision applies whenever the charter of a home rule city is repealed, so Douglas' charter may not be repealed when a majority of the votes cast in Douglas do not favor repeal. Appellees say that article X, section 7 empowers the legislature to devise means for dissolution of home rule cities other than submission of charter repeal referenda to their voters. Article X, section 7 provides that:

> Cities shall be incorporated in a manner prescribed by law, and shall be a

part of the borough in which they are located. Cities shall have the powers and functions conferred by law or charter. They may be merged, consolidated, classified, reclassified, or dissolved in the manner provided by law.

Alaska's Constitution further provides that the terms "by law" and "by the legislature" are used interchangeably when related to law-making powers.[15]

We think appellees' position is correct. Article X, section 7 leaves the legislature free to determine the manner of dissolution of cities. On the other hand, article X, section 9 grants to the qualified voters of a city the right to adopt, amend, or repeal a home rule charter. The distinction between dissolution of cities and adoption, amendment, or repeal of home rule charters is, in our view, of controlling significance. Article X, section 9 empowers first class cities to determine the local question of whether to have home rule without interference by others, but by virtue of article X, section 7, the legislature is authorized to decide the broader and quite different question of whether a home rule city should be dissolved, as well as the method or manner of dissolution. A similar policy distinction underlies the constitutional provision for establishment of a local boundary commission.[16] In regard to the Local Boundary Commission, the minutes of the constitutional convention were examined in Fairview Public Utility District No. One v. City of Anchorage, 368 P. 2d 540 (Alaska 1962).[17] There it was said

14. Under AS 29.85.160(c),
[i]f a majority of the votes cast in the area of the borough outside all first class and home rule cities and a majority of the votes cast in the remaining area of the borough, composed of all first class and home rule cities, are cast in favor of the proposed charter, the charter is ratified.

15. Alaska Const. art. XII, § 11.

16. Alaska Const., art. X, § 12.

17. The *Fairview* case upholds the validity under art. X, § 12 of legislation establish-

ing the Local Boundary Commission and authorizing it to recommend annexation by a city, the recommendation to be effective unless disapproved by the legislature. In that case, the City of Anchorage annexed a public utility district within the city. Since the constitution did not plainly require that this procedure be barred until boroughs were organized, we refused to infer such a requirement. Reference was made to language of the Committee on Local Government of the Constitutional Convention that the annexation process

that the framers of the Alaska Constitution thought that "local political decisions do not usually create proper boundaries and that boundaries should be established at the state level."[18] *Fairview* held that residents of a community have no constitutionally protected interest in its existence as a separate governmental unit, so the legislature may provide for its annexation without their consent.[19] *Fairview* was followed by Oesau v. City of Dillingham, 439 P.2d 180 (Alaska 1968), upholding the Local Boundary Commission's dissolution of a fourth class city without a vote of its residents.[20]

■ Though the Local Boundary Commission is not involved in unification of government units provided for under AS 29.85.010–210, the enabling constitutional provisions, as well as the *Fairview* and *Oesau* decisions, offer a cogent analogue for the constitutional distinction between article X, section 9, granting the qualified voters of a first class city the right to adopt, amend, or repeal a home rule charter, and article X, section 7, providing that cities may be merged, consolidated or dissolved in the manner provided by the legislature. It appears that this cleavage is reflective of a policy which has as its objective the placement of decisional responsibility for local problems within local control and decisional responsibility for broader problems in control of a broader community. Therefore, in light of the authorization provided by article X, section 7 for legislative enactment of a statutory system for the merger and consolidation, as well as the dissolution of cities, we hold that AS 29.85.160(c) is constitutional and does not violate the provisions of article X, section 9. Given the constitutional basis afforded by article X, section 7, we cannot say that the statutory system for unification of local government units lacked a rational policy basis or conflicted with the provisions of article X, section 9.[21]

■ Appellants further contend that unification is barred by an implied constitu-

---

should be at a level where area-wide or state-wide considerations, as well as local considerations, would be objectively considered, because "local political decisions do not usually create proper boundaries and * * * boundaries should be established at the state level." In refusing to infer a nonexplicit constitutional limitation on the Local Boundary Commission, further reference was made to the inadequacies of an annexation system dependent on the consent of the area to be annexed and the undesirability of two separate governments in one community.

18. Fairview Pub. Util. Dist. No. One v. City of Anchorage, 368 P.2d 540, 543 (Alaska 1962) (footnote omitted).

19. *Id.* at 545–546.

20. *Oesau* upheld a declaratory judgment that, by a Local Boundary Commission recommendation not disapproved of by the legislature, the City of Wood River was dissolved and unified into the City of Dillingham, whose boundaries had included it. *Fairview's* interpretation that the constitution sought to move the locus of decision-making on boundaries from the local to the state level and avoid needless multiplicity of local government was re-

affirmed. In accord with this policy, the Local Boundary Commission's decision to dissolve Wood River was upheld, even though art. X, § 12 provided that it should make "changes" in boundaries, art. X, § 7 provided that cities may be "dissolved in the manner provided by law," and the legislature had not explicitly given the Local Boundary Commission power to dissolve cities.

21. The general rule elsewhere is that the legislature possesses broad power to provide for dissolution of cities in any manner it wishes. 1 C. Antieau, Municipal Corporation Law § 1.23 (1968). Hunter v. City of Pittsburgh, 207 U.S. 161, 28 S.Ct. 40, 52 L.Ed. 151 (1907), upholds against federal constitutional challenge annexation of a smaller city by a larger one by majority vote of the two taken together, where a majority of votes cast in the smaller city opposed annexation. *See also* Deane Hill Country Club, Inc. v. City of Knoxville, 379 F.2d 321 (6th Cir.), cert. denied, 389 U.S. 975, 88 S.Ct. 476, 19 L.Ed.2d 467 (1967) ; Detroit Edison Co. v. East China Tp. Sch. Dist., 378 F.2d 225 (6th Cir.) ; cert. denied, 389 U.S. 932, 88 S.Ct. 296, 19 L.Ed.2d 284 (1967).

tional requirement that cities not be dissolved in favor of boroughs.[22] On this theory appellants challenge the constitutionality of AS 29.85.170, which provides that upon ratification of the unification charter, local government units within the unified area are dissolved. We think appellants' challenge is for the most part disposed of by our discussion pertaining to the constitutionality of AS 29.85.160(c). Unification is consistent with the purpose expressed in article X, section 1 of minimizing the number of local government units. Article X, section 2 merely authorizes but does not require the coexistence of cities and boroughs. In view of the express constitutional policy of minimizing the number of local government units, the grant to the legislature of the power to decide on the manner of dissolution of cities, found in article X, section 7, and the absence of either an explicit ban against unification, or a persuasive basis for inferring such a prohibition, we hold AS 29.85.170 constitutional.

■ Appellants next argue that the legislature has unconstitutionally delegated its powers of dissolution. Conceding that article X, section 7 of the Alaska Constitution empowers the legislature to dissolve cities, it is argued that by placing this power in the legislature, the constitution impliedly prohibits the legislature from delegating the power to others. In the case at bar, we are not presented with an instance of impermissible delegation. As

was indicated previously, article X, section 7 provides that cities may be "dissolved in the manner provided by law," a phrase interchangeable with "in the manner provided by the legislature." Since the provision says dissolved "in the manner" provided by the legislature, it empowers the legislature to construct any otherwise constitutional scheme for dissolution, rather than requiring the legislature to perform the dissolution.

Appellants' final point is that AS 29.80.-011 implies a prohibition against dissolution of cities in conjunction with unification procedures. AS 29.80.011 provides that:

> [t]wo methods may be used to initiate dissolution of home rule and general law cities: (1) petition to the local boundary commission under regulations adopted by the commission; or (2) the local option method specified in §§ 21–81 of this chapter.

■ This statute applies to dissolution apart from unifications, and was adopted later than AS 29.85.170, which provided that ratification of a unification charter works a dissolution. AS 29.85.170 and AS 29.80.011 are functionally different. We cannot ascertain any basis for finding an implied repeal of AS 29.85.170 by virtue of the subsequent enactment of AS 29.80.011.[23]

Affirmed.

DIMOND, J., not participating.

---

22. The Constitutional provisions from which appellants infer a bar against unification are art. X, §§ 1, 2, 4, 7, 9, and 13. These six sections provide, respectively, that (1) the purpose of the local government article is to "provide for maximum local self-government with a minimum of local government units"; (2) "[a]ll local government powers shall be vested in boroughs and cities"; (4) cities are to be represented on borough assemblies; (7) cities are to be incorporated, merged, consolidated, and dissolved as provided by law and shall be part of the boroughs in which they are located; (9) home rule charters may be repealed by the voters of the city or borough having the charter; (13) cities may transfer powers or func-

tions to boroughs unless prohibited by law or charter and may revoke the transfers. Appellants' argument is that these sections show that their draftsmen contemplated the continuation of cities within boroughs rather than the swallowing up of the former by the latter.

23. See 1 F. Horack, Sutherland on Statutory Construction § 2014 (3d ed. 1943), for a discussion of the presumption against implied repeal. In the case at bar, the 1968 act (SLA 1968, ch. 170 § 8) makes no reference to the 1967 act (SLA 1967, ch. 134) which established the framework for unification of local government units (AS 29.85.010–AS 29.85.-210).