PETER PAN SEAFOODS, INC.,
Appellant,

v.

Glen STEPANOFF, Joyce Stepanoff, and also, all other persons or parties unknown claiming a right, title, estate, lien or interest in the real estate described in the complaint in this action, Appellees.

No. 5789.

Supreme Court of Alaska.

Sept. 10, 1982.

Melvin M. Stephens, II, Hartig, Rhodes, Norman, Mahoney & Edwards, Kodiak, for appellant.

Margie MacNeille, Duncan, Weinberg & Miller, Anchorage, as amicus curiae for appellee.

Before BURKE, C.J., RABINOWITZ, MATTHEWS and COMPTON, JJ. and DIMOND, Senior Justice.*

OPINION

DIMOND, Senior Justice.

This appeal challenges the propriety of the trial court's refusal to enter a default judgment in a quiet title action. The trial court's refusal was apparently based on its finding that the defaulting defendant, Joyce Stepanoff, has never formally conveyed her property interest in the disputed parcel of land but instead retains a present ownership interest. We recognize that care must be taken to ensure that an absent defendant is not unjustly deprived of his or her rights and that the decision to enter a default judgment accordingly rests within the sound discretion of the trial court. However, in view of the particular circumstances surrounding the instant case, we

---

* Dimond, Senior Justice, sitting by assignment made pursuant to article IV, section 11, of the Constitution of Alaska, and Alaska R. Admin. P. 23(a).

find that the trial court's refusal to enter a default judgment constituted an abuse of discretion and must be reversed.

### I.

Glen and Joyce Stepanoff acquired the property in dispute (the property) in 1974 as tenants by the entirety. The conveyance was duly recorded and the land was described in the deed as follows:

All of U.S. Survey No. 2233 in Section 8, Township 45 South, Range 58 West, Seward Meridian, Aleutian Recording District, Third Judicial District, State of Alaska;

ALSO DESCRIBED OF RECORD AS All of the land embraced in Soldiers' Additional Homestead Entry, U.S. Official Survey No. 2233, situated on Anchorage Bay, Alaska, containing three acres and 54 hundredths of an acre.

In March 1975 Glen Stepanoff purported to convey the property to Calvin Skonberg. Glen made a marginal notation on the quitclaim deed under which he and Joyce had originally acquired title to the property which read as follows:

On the Mar. 1 1975 I *sell* this land to Calvin Skonberg paid in full $300.00

/s/ Glen R. Stepanoff

However, the "deed" to Skonberg was not signed by Joyce and nothing in the record indicates whether she was aware of the transaction. Although the marginal notation was not initially witnessed or notarized, on July 8, 1976, Glen and Skonberg appeared before the postmaster at Chignik, Alaska, whereupon the signatures were affirmed and the postmaster's seal was affixed.

■ In June 1975 (three months after Glen's conveyance to Skonberg) Joyce obtained a divorce from Glen from the Superior Court of Washington for Whatcom County. Because Glen did not appear in the action, the dissolution decree was obtained by default. Provisions were made for the division of the Stepanoff's marital property and under the terms of the decree Glen was awarded realty which included the parcel of land now in dispute. There is no evidence in the record, however, that Joyce ever executed a formal conveyance of the property to Glen. Because the court of one state cannot make a decree which will operate to change or directly affect the title to foreign real property, it follows that Joyce remains a record owner despite her documented intentions. *Taylor v. Taylor,* 192 Cal. 71, 218 P. 756 (1923); *Fuller v. Fuller,* 175 Or. 136, 151 P.2d 979 (1944); *Brown v. Brown,* 46 Wash.2d 370, 281 P.2d 850 (1955).

In 1977 Calvin Skonberg conveyed his title to the property to Peter Pan Seafoods, Inc. Peter Pan initiated the instant suit in an effort to clear its title to the property and named both Joyce and Glen Stepanoff as defendants in its complaint.

Glen appeared to defend his interest, but Joyce did not. Glen's attempts to deny the validity of Peter Pan's title to the property were rejected by the superior court and summary judgment was granted against him. The court ruled that there was no genuine issue of fact regarding Glen's conveyance of the property to Skonberg or his capacity at the time he executed the conveyance. Accordingly, a memorandum opinion and decision was issued declaring that Glen had no right, title or interest in the disputed real property. Although Joyce made no appearance or attempt to defend her interest, the court went on to rule sua sponte that she retained an undivided one-half interest in the property as a tenant in common with Peter Pan.[1] For this reason

---

1. The court's reasoning as to Joyce's property interest can be summarized as follows: (1) The quitclaim deed from Glen to Skonberg on March 1, 1975, conveyed only the interest that Glen had in the tenancy by the entirety with his then wife, Joyce. To wit: the right to the fee interest if Glen should survive Joyce, or the rights in the property accruing to Glen if the tenancy should be severed by operation of law. (2) The divorce decree granted to Joyce worked as a severance of the tenancy by the entireties. (3) As a result of the severance, Joyce and Skonberg (as the grantee of Glen's interest) became tenants in common of the subject property to the extent of a one-half undivided interest each. (4) Skonberg's conveyance of his

the court, in its discretion, refused to enter a default judgment against Joyce Stepanoff as requested by Peter Pan.

## II.

Peter Pan submits that it was a clear abuse of discretion for the trial court to refuse to enter a default judgment against Joyce—a party who has made no appearance in the quiet title action nor taken any other actions evidencing an intent to assert a claim to the property. Peter Pan contends that the fact that there is a cloud on its title to the property should not preclude entry of a default judgment against Joyce. On the contrary, it is precisely because questions existed concerning the recorded chain of title that the action to quiet title was initiated in the first place. Moreover, Joyce's failure to appear and defend has effectively blocked Peter Pan from pursuing several theories under which it proposed to establish its clear title to the property.[2]

When an application for default is made to the court under Alaska Civil Rule 55(c),[3] the trial court is required to exercise its discretion in determining whether the judgment should be entered.[4] Although a party has no absolute right to a default judgment following entry of a technical default, the court may not arbitrarily deny entry of a judgment against the defaulting party. The policy behind permitting default judgments recognizes that "the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights."[5]

The primary issue on appeal is whether the superior court abused its discretion by refusing to enter a default judgment under Alaska Civil Rule 55(c). An abuse of discretion will only be found by this court when we are left with a definite and firm conviction, after reviewing the whole record, that the trial court erred in

interest in the property to Peter Pan in 1977 therefore resulted in Peter Pan becoming a tenant in common with Joyce. *See generally,* 4A R. Powell, Law of Real Property §§ 623–24 (Rohan rev. ed. 1977).

2. Peter Pan contends that through discovery Joyce could have been asked to admit that she claimed no interest in the property or could have been questioned as to whether or not Glen was acting with her knowledge and consent when he sold the property to Skonberg. Inquiries could also have been made into facts supporting a theory that Joyce ratified her husband's conveyance of the property to Skonberg.

3. Alaska R. Civ. P. 55 reads in part:
   (a) Entry. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter his default.
   (b) Judgment by the Clerk. When the plaintiff's claims against a defendant is for a sum certain or for a sum which can by computation be made certain, the clerk upon the request of the plaintiff and upon affidavit of the amount due shall enter judgment by default . . . .
   (c) Judgment by the Court.
   (1) In all other cases the party entitled to a judgment by default shall apply to the court therefor; . . . . If, in order to enable the court to enter judgment or to carry it into

effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper.

4. While discussing the exercise of sound judicial discretion under Fed. R. Civ. P. 55, from which Alaska R. Civ. P. 55 is drawn, Wright & Miller note that the relevant factors which may be considered include:
   *the amount of money potentially involved; whether material issues of fact or issues of substantial public importance are at issue; whether the default is largely technical; whether plaintiff has been substantially prejudiced by the delay involved; and whether the grounds for default are clearly established or are in doubt. Furthermore, the court may consider whether the default was caused by a good faith mistake or excusable neglect; how harsh an effect default judgment might have; and whether the court thinks it later would be obliged to set aside the default on defendant's motion.*
   10 C. Wright and A. Miller, Federal Practice and Procedure § 2685, at 265–67 (1969) (footnotes omitted).

5. *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe,* 432 F.2d 689, 691 (D.C. Cir. 1970).

its ruling.[6]  After reviewing the record in the instant case, while keeping in mind the purpose and policy behind default judgments, we conclude that the trial court erred by failing to enter a default judgment in favor of Peter Pan.

■  Several factors contribute to our finding.  Primary among them is the fact that Peter Pan's counsel has made diligent efforts to locate Joyce and apprise her of her rights.  On the other hand, Joyce has evidenced no interest in the proceedings whatsoever, and, as detailed below, has apparently taken affirmative action to avoid service of process.

The first attempt to serve Joyce was made by certified mail directed to her last known address, the home of her parents in Seattle.  In accordance with Alaska Civil Rule 4(h), copies of the summons and complaint were sent by certified mail for restricted delivery only to Joyce Stepanoff.  These documents were delivered on July 17, 1979, but were signed by someone other than the addressee.

Counsel for Peter Pan subsequently made telephone contact with the parents of Joyce on three different occasions to ascertain that Joyce had received actual notice of the action.  According to the affidavit of Peter Pan's counsel, contact was made with Mrs. C.W. Brisky, Joyce's mother, on August 20, 1979, by telephone.  Mrs. Brisky told counsel that Joyce had received a copy of the complaint and summons but had decided not to respond.  At that point, counsel asked Mrs. Brisky to call her daughter, whose whereabouts she refused to reveal, and to explain the necessity of her accepting personal service of the complaint and summons.  In a later phone call, counsel was informed by Mrs. Brisky that she had spoken to her daughter but Joyce refused to cooperate and directed her parents not to reveal her whereabouts.

On October 3, 1979, default was entered against Joyce for failure to answer or otherwise defend in this action.  However, to ensure that adequate process was effected, Peter Pan requested, and received permission from the court to serve Joyce by publication under the provisions of Alaska Civil Rule 4(e).  Publication of the summons against Joyce took place in the Kodiak Daily Mirror on February 29 and March 7, 14, and 21, 1980.  Again, no appearance or answer was made by Joyce and an entry of default was made for the second time on August 27, 1980.  However, the court on its own initiative refused to enter a default judgment against Joyce.

Although the superior court concluded that Joyce presently holds an undivided interest in the property with Peter Pan, we find it significant that there is nothing in the record to indicate that she in fact claims such an interest in the property.  There is no evidence that Joyce has shown any interest in the property since her husband sold it to Skonberg—she has not paid taxes on the property nor complained of Peter Pan's use and occupancy of it.  In fact, the terms of the Stepanoff's dissolution decree obtained by Joyce are clear evidence of her intention to relinquish her title to the property to Glen.  The trial court's determination that Joyce and Peter Pan share a tenancy in common is, in all likelihood, a result that was neither contemplated nor desired by any of the parties involved.  In sum, what little evidence there is supports Peter Pan's theory that Joyce makes no claim to the property.

As a result of Joyce's failure to appear Peter Pan is unable to pursue several possible theories in defense of its claim that would depend in whole or part on Joyce's state of mind and knowledge of certain facts at particular points in time.  Moreover, if the trial court's decision is allowed to stand, the result offers no practical protection or gain to Joyce, but instead places Peter Pan in economic limbo.  As a property owner, Peter Pan may be unable to sell the property or unwilling to develop the land because the court has decreed that it is

---

6.  Cf. Lovell v. Lovell, 645 P.2d 151 (Alaska 1982); McCracken v. Davis, 560 P.2d 771, 776 (Alaska 1977) (construing trial court's discretion in ruling upon relief from judgment under Civil Rule 60(b)).

co-owned by a party who is a missing person. Such a result is contrary to the policy which favors clear and definite resolution of questions concerning title to real estate.

We emphasize that this is not a case where a defaulting defendant has come forward requesting that judgment be denied for appropriate reasons. Because a trial on the merits is always preferred over a default judgment, the appearance of Joyce Stepanoff would present a desirable alternative. However, under the present circumstances, the chances of Joyce's coming forward to claim an ownership interest in the property seem minimal and do not justify the court's refusal to enter a default judgment.

For the foregoing reasons, the trial court's judgment is REVERSED and the case REMANDED with orders to enter a default judgment against Joyce Stepanoff.