Steven K. MURPHY, Appellant,

v.

CITY OF WRANGELL and William Klein, Appellees.

No. S–2479.

Supreme Court of Alaska.

Oct. 21, 1988.

Rehearing Denied Dec. 23, 1988.

---

Michael J. Zelensky, Whittaker & Zelensky, Ketchikan, for appellant.

Brian E. Hanson and Edward A. Stahla, Law Offices of Edward A. Stahla, Sitka, for appellees.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Justice.

This appeal presents the question of whether a person imprisoned for refusal to pay a fine is entitled to "good time" reductions to his sentence.

*Facts and Proceedings.*

Steven K. Murphy was convicted, after a jury trial, of disposing of domestic wastewater on state lands without a permit. He was sentenced to thirty days imprisonment, all of which was suspended, and fined $1,000. After proceedings which were held in conformity with AS 12.55.051(a)[1] the magistrate entered a finding that Murphy intentionally refused to pay the fine

---

1. *Alaska Statute 12.55.051(a) provides:*

If the defendant defaults in the payment of a fine or any installment or of restitution or any installment, the court may order the defendant to show cause why the defendant should not be sentenced to imprisonment for nonpayment. If the court finds by a preponderance of the evidence that the default was attributable to an intentional refusal or failure to make a good faith effort to pay the fine

or restitution, the court may order the defendant imprisoned until the order of the court is satisfied. A term of imprisonment imposed under this section may not exceed one day for each $50 of the unpaid portion of the fine or restitution or one year, whichever is shorter. Credit shall be given toward satisfaction of the order of the court for every day a person is incarcerated for nonpayment of a fine or restitution.

despite his ability to do so.[2] As authorized by AS 12.55.051(a), the court sentenced him to imprisonment as follows:

> STEVEN K. MURPHY is hereby committed to the custody of the Department of Corrections to serve twenty (20) days. The twenty (20) days are to be served on weekends from 4:00 P.M. Friday to 6:00 A.M. Monday. Defendant will begin weekend service of jail time on January 18, 1985 and serve five (5) consecutive weekends.[3]

After serving his full sentence, Murphy filed the instant lawsuit against the City of Wrangell and Police Chief William Klein, alleging that he was entitled to a "good time" reduction in his sentence under AS 33.20.010.[4] He seeks compensatory damages for lost wages as well as punitive damages. The superior court granted summary judgment in favor of the City and William Klein dismissing Murphy's complaint. The superior court further awarded the City and Klein $3,500 in attorney's fees. The court subsequently denied a motion for reconsideration.

Murphy appeals both the summary judgment and the award of attorney's fees.

## I. WAS MURPHY ENTITLED TO A GOOD TIME REDUCTION?

■ The right to good time reduction is created by statute and does not derive from either the federal or state constitution. Thus, the issue in the case at bar is purely a question of statutory interpretation. "In accomplishing this task our primary guide is the language used, construed in light of the purpose of the enactment." *Commercial Fisheries Entry Comm'n v. Apokedak*, 680 P.2d 486, 489–90 (Alaska 1984). "[I]f the language of a statute is unambiguous and expresses the intention of the legislature, it should not be modified or extended by judicial construction." *State, Dep't of Natural Resources v. City of Haines*, 627 P.2d 1047, 1049 n. 6 (Alaska 1981).

■ Alaska Statute 33.20.010 guarantees good time reductions only to prisoners "convicted of an offense against the state and sentenced to imprisonment."[5] Thus, the question in this case, as acknowledged by all parties, is whether the failure to pay a fine is "an offense against the state."

The term "offense" is not defined for purposes of this statute. "Unless words have acquired a peculiar meaning, by virtue of statutory definition or judicial construction, they are to be construed in accordance with their common usage." *State, Dep't of Revenue v. Debenham Elec. Supply Co.*, 612 P.2d 1001, 1002 (Alaska 1980); *see* AS 01.10.040. Failure to pay a fine imposed as a sentence for a criminal conviction is not within the common understanding of the word "offense." For example, Black's defines offense: "A felony or misdemeanor; a breach of the criminal laws." Black's Law Dictionary 975 (5th ed. 1979). Similarly, Webster's defines the word: "an infraction of law: crime, misdemeanor." Webster's Third

---

2. Murphy refused to pay the fine as a matter of principle. In the superior court he wrote that "[h]e opposed connection to the Wrangell City sewer system because it failed to function to remove his wastewater and in fact, in his neighborhood, backed up in the sewer line." He therefore continued to dump his waste on state land because hooking up to the sewer system would be "a futile act."

3. Although the sentence purported to be for twenty days, the actual time provided for was only 310 hours, or slightly less than thirteen days. For sentences of thirty days or less, the Department of Corrections converts the number of days to hours. All parties agree that Murphy was required to serve only 310 hours, as provided for by the specific terms of the order, and not the 480 hours he would have had to serve if the twenty-day sentence had not provided for specific hours and days of incarceration.

4. At the time Murphy was sentenced and served his time, AS 33.20.010 provided:

> Notwithstanding AS 12.55.125(f)(3) and (g)(3), each prisoner convicted of an offense against the state and sentenced to imprisonment, whose record of conduct shows that he has faithfully observed the rules of the institution in which he is confined, is entitled to a deduction from his term of imprisonment of one day for every three days of good conduct served.

Ch. 166, § 17, SLA 1978. The statute was amended in 1986. Ch. 11, § 1, SLA 1986.

5. *See supra* note 1.

New International Dictionary, Unabridged 1566 (1961). Since the failure to pay a fine is not commonly understood as a breach of any criminal law, a misdemeanor or a felony, it is not an "offense" within the meaning of AS 33.20.010.[6]

The superior court concluded that "AS 12.55.051(a) is a species of the law of contempt" and not an offense against the state. We think that this is an accurate depiction of the statute. As with contempt, the prisoner always has the option to be released immediately by complying with the court's order. Under AS 12.55.051(a), the court may imprison a recalcitrant defendant for up to one day for each fifty dollars of the fine unpaid, but the defendant may at any time pay off the fine, with credit accrued for the time served, to earn his release. As the court of appeals has noted, AS 12.55.051(a) is a "method for dealing with enforcement of court orders...." *Lominac v. Municipality of Anchorage*, 658 P.2d 792, 794 (Alaska App. 1983). We therefore agree with the superior court that refusal to pay a fine is like a contempt of the court, not an offense against the state. Accordingly, the way to shorten a sentence is to comply with the court order, and not to seek reductions for good time. Granting good time reductions would be the practical equivalent of lowering the fine, which would defeat the coercive purpose of AS 12.55.051(a).

Murphy argues that the purpose of good time reductions under AS 33.20.010 is best served by granting them to defendants imprisoned for nonpayment of fines. He cites the following statement of purpose:

> The credits are said to be in the nature of a payment or reward by the state to the convict for his good behavior, in order to stimulate him to conform to the rules of the institution and to avoid the commission of crimes and misdemeanors during his imprisonment. Such statutes are prompted by the highest motives of humanity, and are generally looked on with favor both by state and federal legislatures.

60 Am.Jur.2d *Penal and Correctional Institutions* § 222 (1987) (footnotes omitted). It is true that all prisoners, including those imprisoned for nonpayment of fines, would likely be induced to behave well if offered good time reductions, serving the purposes of AS 33.20.010. However, it does not follow that all prisoners are entitled to the benefits of the statute. The statute is explicitly limited to those imprisoned for "offense[s] against the state." As discussed above, consistent with the common understanding of the word "offense" and the legislative purpose of AS 12.55.051(a), imprisonment for nonpayment of fines cannot be brought within the plain language of AS 33.20.010.[7]

## II. WAS THE AWARD OF ATTORNEY'S FEES PROPER?

Murphy argues first that fees should not be awarded against him because he is a

---

6. For purposes of Title 11 of the Alaska Statutes, which contains Alaska's criminal law, " 'offense' means conduct for which a sentence of imprisonment or fine is authorized; an offense is either a crime or a violation." AS 11.81.-900(b)(33). " '[C]rime' means an offense for which a sentence of imprisonment is authorized; a crime is either a felony or a misdemeanor." AS 11.81.900(b)(9). " '[V]iolation' is a noncriminal offense punishable only by a fine, but not by imprisonment or other penalty; ...." AS 11.81.900(b)(56).
 One could read these definitions to include nonpayment of a fine within the definition of "offense." Deliberate refusal to pay a fine is "conduct for which a sentence of imprisonment ... is authorized" pursuant to AS 12.55.051(a), meeting the definition of offense in AS 11.81.-900(b)(33). The imprisonment authorized could make the conduct by definition a misde-

meanor, hence a crime, hence an offense. However, these definitions by the terms of the statute apply only to Title 11 and thus not to AS 33.20.010. In interpreting the latter statute, we therefore interpret "offense against the state" according to its common usage.

7. Finally, Murphy argues that a 1960 New York trial court decision is persuasive. *See New York ex rel. Foley v. Dros*, 24 Misc.2d 44, 202 N.Y.S.2d 741 (N.Y.Sup.1960). In that case the petitioner was imprisoned for failure to comply with support orders of the domestic relations court. *Id.* 202 N.Y.S.2d at 742. The court ordered that since he was treated as a criminal prisoner, he was entitled to good time reductions. *Id.* 202 N.Y.S.2d at 743. The opinion in that case does not analyze the language of any statutes similar to AS 12.55.051(a) or AS 33.20.010, and thus it is not persuasive in this case.

public interest litigant.[8] *See Southeast Alaska Conservation Council v. State*, 665 P.2d 544, 552–54 (Alaska 1983). The superior court implicitly rejected this argument by awarding fees against him. We affirm the superior court's award of $3,500 in attorney's fees.

■ It is an abuse of discretion to award attorney's fees against a public interest litigant. *Id.* at 553. A party must satisfy four criteria to be deemed a public interest litigant:

(1) Is the case designed to effectuate strong public policies?

(2) If the plaintiff succeeds will numerous people receive benefits from the lawsuit?

(3) Can only a private party have been expected to bring the suit?

(4) Would the purported public interest litigant have sufficient economic incentive to file suit even if the action involved only narrow issues lacking general importance?

*Id.* We will review the superior court's evaluation of the litigant's public interest status under the abuse of discretion standard. *Citizens for the Preservation of the Kenai River v. Sheffield*, 758 P.2d 624 (Alaska 1988).

■ Assuming that Murphy satisfies the first three criteria, we are of the view that it was not an abuse of discretion for the superior court to find that he was not a public interest litigant because of the fourth criterion.

If Murphy were entitled to good time reductions, he could potentially have been released about 77 hours earlier.[9] Since this time would be on weekends, it would not conflict with his regular job. Thus, it is likely that his compensatory damages would have been quite small.[10] Murphy also sought punitive damages in an unspecified amount. He now claims that these damages would have been at the most "in the low four figures." Accordingly, it might appear that Murphy lacked sufficient economic incentive to bring this lawsuit.

However, in our view there are at least two reasons to conclude that the superior court's ruling was not an abuse of discretion on the ground of adequate economic incentive. First, it is reasonable to assume that a court might award large punitive damages in favor of a plaintiff who was held in prison illegally for 77 hours.

Second, Murphy brought his action in the superior court. At the time he filed his complaint, actions for damages of less than $25,000 could not be filed in the superior court, but had to be filed in the district court.[11] Former AS 22.15.030(a)(1), .030(b), ch. 17, § 3, SLA 1985; AS 22.10.020(a). We assume that the action was properly filed, in which case Murphy must have been seeking damages greater than $25,000. This would clearly give him adequate economic incentive to bring the action without regard to the public interest.

■ Murphy next argues that the $3,500 fee award was unreasonable because it was out of proportion to the amount of money in controversy. We hold the award was not an abuse of discretion for the following reasons. First, as discussed above, there was potentially a significant amount of money at stake in regard to the punitive damages claim. Sec-

**8.** Murphy, appearing pro se, did not explicitly raise this argument in the superior court. However, in opposing the fee award he asserted that he "brought this action in good faith and as a citizen to correct a governmental wrong" and that the case raised "a matter to concern the courts, the department of corrections, and all citizens." This court has held that "the pleadings of *pro se* litigants should be held to less stringent standards than those of lawyers." *Breck v. Ulmer*, 745 P.2d 66, 75 (Alaska 1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1579, 99 L.Ed.2d 894 (1988). For this reason, we believe that Murphy's opposition in the superior court was adequate to assert his status as a public interest litigant.

**9.** This is one-fourth of the 310 hours of his sentence.

**10.** Murphy claims that his compensatory damages would have been only about $150, but this figure did not appear in his complaint or any other pleadings until he was opposing the attorney's fees.

**11.** The jurisdictional amount is now $35,000. AS 22.15.030(a)(1), .030(b); AS 22.10.020(a).

ond, the City had an important policy to uphold with ramifications beyond the instant case. Finally, the amount of damages and the importance of policies underlying the case are not determinative of the reasonableness of the fees. Civil Rule 82(a)(2) provides:

> In actions where the money judgment is not an accurate criteria [sic] for determining the fee to be allowed to the prevailing side, the court shall award a fee commensurate with the amount and value of legal services rendered.

The City sought over $5,000 in actual fees for 58.5 hours of attorney time. The court awarded partial fees of $3,500. Murphy does not contend that the attorneys billed too many hours or charged too high an hourly rate. Under these circumstances, the fees were not unreasonable and the award was not an abuse of discretion.[12]

AFFIRMED.

---

**12.** Murphy also argues that the attorney's fees should be reversed because the motion for fees was not filed within ten days of the judgment. Under Civil Rule 79(a), a cost bill must be filed within ten days. This court has held that attorney's fees are not covered by the literal requirements of Rule 79, and that "[i]t is within the discretion of the trial court to impose a time limit for the filing for attorney's fees." *State v. University of Alaska*, 624 P.2d 807, 817 (Alaska 1981). Moreover, Murphy did not raise this point in the superior court.