Michael J. BRUNER, Appellant,

v.

Judith A. PETERSEN, Professor and Chair, A.A.S. School of Nursing and Health Sciences, University of Alaska, Anchorage, Appellee.

No. S–7736.

Supreme Court of Alaska.

Aug. 29, 1997.

Rehearing Denied Oct. 8, 1997.

Michael J. Bruner, Anchorage, pro se.

Mark E. Ashburn, Ashburn & Mason, Anchorage, for Appellee.

Before COMPTON, C.J., MATTHEWS, FABE and BRYNER, JJ.

*OPINION*

FABE, Justice.

## I. *INTRODUCTION*

Michael J. Bruner claims that the University of Alaska, Anchorage (UAA) breached its contract with him by requiring him to take a course in critical thinking before allowing him to enroll in a nursing course that he had previously failed. The superior court upheld UAA's decision to place this condition on Bruner's continued enrollment in the nursing program. We affirm.

## II. FACTS AND PROCEEDINGS

Bruner is a student at UAA, pursuing an Associate of Applied Science Degree in Nursing. During the fall 1995 semester Bruner earned a grade of "No Pass" in Nursing 222. This was not the first time Bruner had difficulty passing a class required for his major. He received a "D" in Nursing 100 and an "F" in Nursing 160 during the fall semester of 1992, and he received a "D" in Nursing 180 during the spring semester of 1994.[1]

Bruner's clinical supervisor in Nursing 222 believed that Bruner failed to pass the course due to inadequate critical thinking abilities. In the supervisor's opinion, Bruner had difficulty assessing and documenting data and was unable to incorporate the data into the "complete patient picture." The supervisor noted in her evaluation that Bruner did not use certain equipment correctly and that he demonstrated inconsistency in calculating and preparing multiple medications.

UAA Nursing students who are unable to earn an acceptable grade in a nursing or health science course during their initial enrollment may attempt to earn a satisfactory grade one additional time. After failing to pass Nursing 222, Bruner applied to be placed on the waiting list for re-admission to Nursing 222 in the fall 1996 semester. The Admissions and Retention Committee of the Nursing Program (Committee), composed of nursing faculty, informed Bruner of its decision to require him to pass English 120, a course entitled "Critical/Creative Thinking," with a grade of "C" or higher before allowing him to re-enroll in Nursing 222. The Committee stated that taking Critical/Creative Thinking would assist Bruner "in developing more fully cognitive skills which should help [him] to be successful in the nursing courses [he] must complete to graduate from the AAS, Nursing Program." In the letter informing him of the Committee's decision, Professor Judith A. Petersen, chair of the Committee, asked Bruner to call or make an appointment to see her if he had any questions regarding the decision.

UAA provides a course catalog to all students. This catalog states on the inside cover that the catalog "is not a contract but rather a guide for the convenience of students." The catalog further declares that "[t]he University reserves the right to change or withdraw courses, to change the fees, rules, and calendar for admission, registration, instruction, and graduation; and to change other regulations affecting the student body at any time." The UAA School of Nursing and Health Sciences provides a student handbook to all of its students. The handbook states that it is designed to assist students in becoming familiar with various aspects of the nursing degree programs and should be used in conjunction with the UAA course catalog.

The course catalog does not list Critical/Creative Thinking as a required course in the Associate of Applied Science Nursing Program. However, the section of the course catalog relating to academic progress in the nursing program states that "[i]n order to progress within the Associate of Applied Science, Nursing program, students must earn a satisfactory grade (C or higher or P) in all nursing and health sciences courses." The School of Nursing and Health Sciences student handbook provides:

*Academic Progress*

In order to progress within the Associate of Applied Science, Nursing program, students must earn a satisfactory grade (C or higher or P) in all nursing and health sciences courses. Please refer to "Withdrawal and Re–Enrollment" for students who are unable to earn an acceptable grade in a nursing course during their initial enrollment.

. . . .

*Withdrawal and Re–Enrollment*

. . . .

*Conditions for re-enrollment will be reviewed on an individual basis by the*

---

1. A "D" is the lowest passing grade at UAA. However, only one "D" in a required course is permitted. A "C" average is required to maintain satisfactory academic standing in the nursing program.

*Chairperson and/or faculty,* and is contingent upon space available.

(Emphasis added.)

The course catalog contains UAA's procedure for resolving student grievances regarding academic decisions made by the university. Under this procedure, a student has the right to appeal academic actions to the dean of the appropriate school and is "entitled to address the [dean] directly if desired before the decision is rendered by [the dean]." A further appeal to the vice chancellor for academic affairs is available "[f]or removal from a major program or loss of baccalaureate degree-seeking status only." While the student handbook does not address academic appeals, it contains a section entitled "Resolving Conflicts," which details the steps a student should take in attempting to resolve a conflict between a student and a faculty member. The handbook suggests that the student should make an appointment with the faculty member in question to discuss the problem thoroughly. If the problem is not resolved at this stage, the handbook then recommends a series of individual administrators with whom the student should meet. The handbook states that the last step within the school is an appointment with the dean, which is the same procedure afforded for an academic appeal. If the problem is still not resolved at this stage, the handbook informs students that they have a right to follow the University Grievance Procedure.[2]

On December 18, 1995, Tina DeLapp, the Associate Dean for Nursing, met with Bruner to discuss the requirement that he pass English 120 before re-enrolling in Nursing 222. In a memorandum written after the meeting, DeLapp stated that she told Bruner "that the faculty had identified critical thinking skills as impeding his ability to apply knowledge gained in theory portions of course work in the clinical practice area." She also "indicated that the faculty was concerned that those deficits would result in continued lack of success in subsequent nursing courses and had identified completion of ENGL 120 as being potentially beneficial in facilitating his steady progress through the remaining clinical courses in the program."

Bruner wrote a letter to the Nursing Administration protesting the requirement that he pass English 120 prior to re-enrolling in Nursing 222. He argued that since English 120 is not a requirement of the nursing program, the Committee's decision should be overturned as arbitrary and capricious, clearly erroneous, or based on unlawful discrimination.

Bruner submitted the letter to Nancy Creason, the Interim Dean for the School of Nursing and Health Sciences, on December 18, 1995. Dean Creason met with Bruner on December 20 to discuss his complaint. According to Dean Creason's summary of the meeting written the same day, the discussion was "convoluted." Dean Creason's summary states that Bruner "was unable to clearly articulate anything on these charges except to say the critical thinking course is not a degree requirement and he thinks he can think critically now."

Following the meeting, Dean Creason sent Bruner a letter affirming the Committee's decision. In it she stated that the Committee's decision was within its authority to impose individual conditions for re-enrollment as stated in the student handbook, was carefully considered, and was reasonably based upon the evidence before it. Creason also noted that "the faculty identified critical concerns about [Bruner's] performance including concerns for [patient] safety in the areas of medication administration, physical assessment and documentation, managing patient's changing status and concerns for independent practice and thought processes." Dean Creason stated in her letter that because the requirement was a condition of continuing enrollment rather than removal from a major program, her decision was the final decision of the university. She informed Bruner that if he wished to seek judicial review of the

2. At the time Bruner was required to take English 120 the university did not have a formal grievance procedure. The procedure for an academic appeal and the procedure for resolving conflicts were the sole grievance mechanisms available to students. This issue is discussed further in Section III.B.

decision, he could file an appeal with the superior court within thirty days of her decision.

A week later, Bruner filed a complaint against Professor Judith Petersen in superior court. The superior court found that the suit was functionally an appeal of Dean Creason's decision[3] and issued a written decision affirming Dean Creason. The superior court held that the provisions in the course catalog and the student handbook did not constitute a contract between the university and Bruner. The court further concluded that even if a contract did exist, the "requirement placed upon appellant was clearly based upon his performance as a student and appears to be more than reasonable." Finally, the superior court found that the university provided Bruner with the correct administrative procedure for an appeal of an academic action as described in the course catalog.

 During the summer session at UAA, Bruner took English 120 and received a grade of "A".[4] On September 29, 1996 the superior court granted UAA's motion for attorney's fees and ordered Bruner to pay Petersen $2,103.00 in attorney's fees. Bruner now appeals the superior court's decision.

3. Professor Petersen filed a Motion to Dismiss Bruner's complaint and convert the action into an administrative appeal. In an order dated April 17, 1996, the superior court allowed Bruner's breach of contract and denial of administrative process claims to proceed as an administrative appeal and dismissed the remaining counts. The court's dismissal of the remaining counts is not at issue in this appeal.

4. The fact that Bruner has already taken and passed English 120 raises the issue of mootness. In the present appeal, Bruner is protesting the requirement that he pass English 120 before re-enrolling in Nursing 222. Since he has already passed that course, there is no relief that Bruner can now request from this court. Under ordinary circumstances, we will refrain from deciding questions where events have rendered the legal issues moot. *O'Callaghan v. State*, 920 P.2d 1387, 1388 (Alaska 1996). A claim is moot if the party bringing the action would not be entitled to any relief even if he prevailed. *Maynard v. State Farm Mut. Auto. Ins. Co.*, 902 P.2d 1328, 1329 n. 2 (Alaska 1995). However, Bruner also appeals the superior court's dismissal of his claim for $10,000 for income lost because he gave up working to take English 120. In addition, we

## III. DISCUSSION[5]

### A. Did UAA Breach a Contract with Bruner by Requiring Him to Pass English 120 before Re-enrolling in Nursing 222?

 Bruner contends that the superior court erred in finding that no contract existed between himself and UAA. He claims that the course catalog and student handbook together constituted a contract between himself and the university promising that he would have to take only the required courses listed under his major in the catalog to graduate. According to Bruner, UAA breached this contract when the committee required him to pass English 120 before re-enrolling in Nursing 222 because English 120 is not listed as a requirement for Bruner's major.

The course catalog lists required courses for each major, but also states that "[i]n order to progress within the Associate of Applied Science, Nursing program, students must earn a satisfactory grade (C or higher or P) in all nursing and health sciences courses." The student handbook states that "for students who are unable to earn an acceptable grade in a nursing course during their initial enrollment ... [c]onditions for re-enrollment will be reviewed on an individual basis by the Chairperson and/or faculty."

will review an otherwise moot issue to determine who the prevailing party is if such a determination is necessary for purposes of awarding attorney's fees. *LaMoureaux v. Totem Ocean Trailer Express, Inc.*, 651 P.2d 839, 840 n. 1 (Alaska 1982). Bruner was ordered by the lower court to pay Petersen fees in the amount of $2,103. Since Bruner's appeal of the court's denial of his claim for lost income and his appeal of the attorney's fees award are still at issue, we consider the merits of this appeal.

5. We independently review the merits of an administrative determination. No deference is given to the superior court's decision when that court acts as an intermediate court of appeal. *Handley v. State, Dep't of Revenue*, 838 P.2d 1231, 1233 (Alaska 1992). The "substitution of judgment" test is used for questions of law where no agency expertise is involved. *Id.* Whether a contract existed between Bruner and UAA is a question of law that does not involve agency expertise. Therefore, we review the superior court's decision using the "substitution of judgment" test.

The catalog and handbook do not promise that Bruner's requirements for graduation will be limited to those classes listed as required for his major. Instead, they explicitly state that further academic conditions may be imposed on a student who fails a class. Therefore, the Committee acted in accordance with the provisions of the course catalog and student handbook when it evaluated Bruner's academic record to determine what conditions of re-enrollment were necessary to ensure his successful completion of the program.

While we have not previously decided whether the catalog or handbook of a state university constitutes a contract between the student and the university, we need not reach that issue in this case. Here, UAA's actions fully conformed with the provisions of the course catalog and the student handbook. Thus, even if the handbook and catalog constitute a contract between UAA and Bruner, there was no breach.

█ Bruner also argues that if a provision of the handbook authorizes the faculty to set conditions for re-enrollment, the provision is "unconscionable" and should be ignored. In matters of academic merit, curriculum, and advancement, courts afford university faculty and administrators substantial discretion. *Board of Curators, Univ. of Mo. v. Horowitz*, 435 U.S. 78, 90–92, 98 S.Ct. 948, 955–56, 55 L.Ed.2d 124 (1978); *see also id.* at 96, n. 6, 98 S.Ct. at 958, n. 6 (Powell, J., concurring); *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225, 106 S.Ct. 507, 513, 88 L.Ed.2d 523 (1985).

> When judges are asked to review the substance of a genuinely academic decision ... they should show great respect for the faculty's professional judgment. Plainly, they may not override it unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment.

*Ewing*, 474 U.S. at 225, 106 S.Ct. at 513. The faculty is in the best position to determine how to help the student to succeed and must have the discretion necessary to maintain the integrity of the curriculum and the degree. There is nothing in the provision governing the circumstances in which a student must re-take a class that he or she has failed that represents a "departure from accepted academic norms." Therefore, the provision is valid.[6]

### B. *Was Bruner Afforded the Appropriate Administrative Procedure for His Academic Appeal?*

█ Bruner contends that the superior court erred in finding that the administrative process furnished to him was adequate. He claims that he was denied due process because the UAA Nursing Administration did not follow their own regulations in the School of Nursing and Health Sciences handbook. He also argues that he should have been allowed to appeal the dean's decision to the chancellor, and that the "Nursing Administration," which decided his academic appeal, was not an impartial tribunal. These claims are without merit.

UAA's catalog and handbook provide procedures to resolve a student's dispute about an academic action and to resolve conflicts between individual faculty and students. The Committee's decision to require Bruner to pass English 120 before re-enrolling in Nursing 222 was a formal academic action changing Bruner's required curriculum. The procedure for a student to appeal an academic action is clearly set forth in the course catalog. To institute an appeal, the student must make a written request for appeal to the dean within fifteen days of the action disputed. The request must set forth "the action to be reviewed, the reason [he] believes the action was inappropriate, and the corrective action" requested. Bruner followed this procedure when he submitted his letter of December 18, 1995, to the dean.

6. Bruner also contends that the provision is unacceptably vague. He alleges that the provision's vagueness allowed the UAA Nursing Administration to treat Bruner differently from his fellow students, to "maliciously" discriminate against him, and to deny him due process of law.

Bruner also argues in a conclusory fashion that "the Nursing Administration violated the equal protection of the law by making unjust distinctions between students." There is nothing in the record to support these claims, and the superior court did not err in rejecting them.

The procedure detailed in the catalog sets forth the standard for the dean to utilize in considering the appeal.[7] Bruner cited this standard in his letter of appeal, and Dean Creason followed it in making her decision. The procedure provides that a student has the right to address the dean directly before a decision is rendered, and that in circumstances such as these the dean's decision is final. Bruner was allowed to discuss his appeal with the dean at length. We conclude that UAA afforded Bruner all of the procedural requirements provided for in the catalog and handbook.[8]

■■■ As to Bruner's argument that he should have been allowed to appeal Dean Creason's decision to the chancellor of the university, the course catalog states that in most instances, the dean's decision is the final decision within the university. The catalog provides that in instances of "removal from a major program or loss of baccalaureate degree-seeking status *only*, the decision of the dean/director shall be appealable to the Vice Chancellor for Academic Affairs." (Emphasis added.) Because Bruner was not threatened with removal from his program or loss of baccalaureate degree-seeking status, he did not have a right to appeal the dean's decision to the vice-chancellor. The catalog and handbook do not provide for appeal to the chancellor under any circumstances.

■■■ Finally, Bruner alleges that Dean Creason's decision should be overturned because she is not an impartial decision maker.

He suggests that because the faculty members on the committee and Dean Creason have a "close and supportive working relationship," Dean Creason was biased. Dean Creason was not a member of the committee that made the initial decision to require Bruner to take English 120. Furthermore, agency personnel and procedure are presumed to be honest and impartial until a petitioner makes a showing of actual bias or prejudgment. *Earth Resources Co. v. State, Dep't of Revenue*, 665 P.2d 960, 962 n. 1 (Alaska 1983). Bruner has not offered any evidence that Dean Creason had actual or probable bias other than the fact that she is dean of the nursing program. We affirm the superior court's conclusion that Bruner "was afforded the correct administrative procedure for his academic appeal."

C. *Did the Superior Court Err in Awarding Petersen Attorney's Fees?*

■■■ In November 1996 Bruner amended his points on appeal to include the assertion that the superior court erred in awarding Petersen attorney's fees. However, his briefing on the issue is limited to a conclusory request "for an injunction ordering: ... the appellant and appellee to both bear their own attorney's fees."

■■■ We review the award of attorney's fees under the abuse of discretion standard. *McNett v. Alyeska Pipeline Serv. Co.*, 856 P.2d 1165, 1167 (Alaska 1993). We will find that a trial court abused its discretion only when we are left with a definite and

7. The Academic Appeals section of the catalog states: "[A]s a general rule, the dean/director will not overturn the action of a faculty member or committee unless it is shown to be arbitrary and capricious, clearly erroneous, or based on unlawful discrimination."

8. Bruner argues that the university violated its regulations because it did not have a formal grievance procedure available as stated in the handbook. The handbook provides that if a student is "unable to resolve a problem on an informal basis ... the student has a right to follow the University Grievance Procedure," and that "[p]ackets for student grievances with employees, faculty, or the University as a whole may be obtained from the Office of the Chancellor." At the time of this suit, the grievance procedure was in draft form, and not available to students. However, the draft grievance procedure states

that it is not available to resolve academic decisions. The Committee's decision was an academic decision because it determined Bruner's required curriculum. Therefore, even had it been adopted by the time of Bruner's case, the grievance procedure would not have provided the appropriate manner for Bruner to appeal the Committee's decision.

Bruner also alleges that UAA has violated the Americans with Disabilities Act of 1990(ADA) by failing to "adopt and publish grievance procedures providing for prompt and equitable resolution of complaints alleging any action that would be prohibited" by the Act. While he states that he is a person covered by the Act, he does not specify his disability. Nor does he allege that requiring him to take English 120 constitutes a violation of the ADA. Therefore, we will not address this argument.

firm conviction, after reviewing the whole record, that the trial court erred in its ruling. *Peter Pan Seafoods, Inc. v. Stepanoff,* 650 P.2d 375, 378–79 (Alaska 1982).

After considering Petersen's motion for attorney's fees and Bruner's opposition, the superior court awarded Petersen attorney's fees in the amount of $2,103.00, the percentage stipulated in Alaska Civil Rule 82(b)(2). The superior court rejected Bruner's argument that he was a public interest litigant and thus exempt from paying attorney's fees. In *Murphy v. City of Wrangell,* 763 P.2d 229 (Alaska 1988), we articulated four criteria that must be satisfied before a party will qualify as a public interest litigant:

(1) Is the case designed to effectuate strong public policies?

(2) If the plaintiff succeeds will numerous people receive benefits from the lawsuit?

(3) Can only a private party have been expected to bring the suit?

(4) Would the purported public interest litigant have sufficient economic incentive to file suit even if the action involved only narrow issues lacking general importance?

*Id.* at 233.

The superior court found that the "economic incentive of $10,000 in wages, coupled with the request for 'punitive damages' for an additional $10,000, demonstrates a sufficient economic incentive to bring the suit regardless of the possible public interest elements of his claim," and determined that Bruner was not entitled to public interest litigant status. We agree with the superior court's reasoning and conclude that it did not abuse its discretion in awarding attorney's fees consistent with Rule 82.

## IV. *CONCLUSION*

We AFFIRM the superior court's ruling that the university did not breach a contract with Bruner and that the administrative procedure afforded Bruner was adequate. We also AFFIRM the superior court's award of attorney's fees.

EASTAUGH, J., not participating.