**William HUNT, Appellant,**

v.

**UNIVERSITY OF ALASKA,
FAIRBANKS, Appellee.**

**No. S–10115.**

Supreme Court of Alaska.

Aug. 9, 2002.

Rehearing Denied Oct. 25, 2002.

---

William Hunt, pro se, North Pole.

Paul B. Eaglin, University of Alaska Office of the General Counsel, Fairbanks, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

## OPINION

CARPENETI, Justice.

## I. INTRODUCTION

William Hunt applied for and was denied outright admission to the Elementary Education Program by the School of Education at the University of Alaska Fairbanks. Instead, he was granted conditional acceptance. After he was unable to fulfill the conditions of his acceptance, the university removed Hunt from his student teaching class. Hunt appealed this decision to the university aca-

demic appeals committee, which found that the School of Education acted in accordance with its published guidelines for admission. Hunt then appealed to the superior court, which upheld the decision of the academic appeals committee and awarded the university $3,000 in attorney's fees. Because the university complied with its regulations in denying Hunt admission, we affirm that decision.

## II. FACTS AND PROCEEDINGS

William Hunt is an aspiring elementary education teacher at the University of Alaska Fairbanks (UAF). After being injured while working as a mechanic in 1995, Hunt enrolled at UAF using his workers' compensation benefits to pay for his education. When his workers' compensation benefits ended, Hunt relied on temporary public assistance to pay for his education and the expenses of raising his children as a single parent. Due to the constraints of the welfare program, Hunt needed to obtain his degree by May 2000.

In early 1999, Hunt applied for admission to the School of Education (SOE) at UAF, three years after first enrolling at the university, as is customary for elementary education majors. Admittance to the SOE is required for an elementary education major to take the methods block [1] and student teaching classes (the so-called "professional year") needed to obtain a bachelor's degree in education.

While Hunt apparently excelled in math and science classes, his language and reading skills were not nearly as strong. The committee of faculty members who reviewed his SOE application (which consisted of his transcripts, recommendations, and timed and untimed writing samples) rated his writing skills as marginal at best. Rather than rejecting Hunt outright, the committee recommended that Hunt be allowed to take the Praxis exam, a test of basic reading, writing, and math skills, after which a decision on his acceptance into the SOE would be made.

When Hunt entered UAF, the Praxis exam was not required for admission to the SOE. In 1998, the state began to require passing scores on the Praxis exam for teacher certification. In the 2000–2001 UAF catalog, students were, for the first time, required to report their Praxis scores to the SOE when applying for admission to the elementary education program.

Hunt took the Praxis exam in spring 1999 and failed the reading and writing portions. The SOE informed Hunt that, unless he retook and passed the Praxis exam, he would be unable to proceed into his professional year. As he did not believe he was required to take the exam under his catalog year [2] of 1996–1997 and the exam was offered only in Anchorage that summer, Hunt requested a waiver of the exam. Hunt was eventually granted a partial waiver that allowed him to take the Fall 1999 methods classes on the conditions that he pass the Praxis exam before beginning student teaching in Spring 2000 and that he attend the Writing Center at UAF to further develop his language skills.

Hunt took the exam again in Fall 1999 but did not receive a passing score. After passing his methods classes and submitting an essay for student teaching that exhibited better writing skills than those exhibited in his initial application to the SOE, Hunt again applied to the student teaching program. Though Hunt began student teaching in January 2000, he was informed by the SOE that he was unable to continue with his student teaching because he had failed to fulfill the condition of passing the Praxis exam. He was then removed from the class.

Hunt appealed the SOE's decision to UAF. A university-wide academic appeals committee held a hearing on Hunt's case in February 2000. In that hearing, it was established that Hunt's approval to student teach was contingent only on his passing of the Praxis

---

1. The methods block is a hands-on class where students learn to teach particular subjects to students. During the blocks (usually one for each subject elementary educators are responsible for), students prepare lesson plans and work with teachers in a classroom setting.

2. A student's degree requirements are established by choosing the requirements listed in the catalog for one of the academic years in which he or she is enrolled as a degree-seeking student.

exam. The appeals committee decided to uphold the requirement that Hunt pass all three parts of the Praxis exam before he began student teaching.

Hunt appealed this decision to the superior court. Superior Court Judge *Pro Tem* Mark I. Wood held that UAF complied with its catalog in requiring Hunt to pass the Praxis exam before student teaching. Finding that UAF's decision to require Hunt to pass the exam was a reasonable exercise of its discretion, the court held that the final decision of the academic appeals committee was not arbitrary or unreasonable. Judge Wood later granted UAF attorney's fees in the amount of $3,000. Hunt now appeals.

## III. STANDARD OF REVIEW

■■■■ In administrative appeals, we directly review the agency action in question.[3] Review of whether UAF complied with its own regulations is limited to a determination of whether the decision was arbitrary, unreasonable, or an abuse of discretion.[4] An abuse of discretion is found "when we are left with a definite and firm conviction, after reviewing the whole record, that the trial court erred in its ruling."[5] "In matters of academic merit, curriculum, and advancement, courts afford university faculty and administrators substantial discretion."[6]

We review the imposition of an attorney's fees award under an abuse of discretion standard.[7]

## IV. DISCUSSION

### A. UAF Was Entitled To Require Hunt To Pass the Praxis Exam as a Condition of Admission to the Elementary Education Program.

■■■■ Hunt argues that UAF ignored all the factors that demonstrated he was ready

and able to complete his professional year. He claims that UAF arbitrarily and capriciously based its decision solely on whether he passed the Praxis exam. He claims that the university failed to comply with the terms of the UAF catalog because successful completion of the Praxis exam is not required in the catalog.

The UAF catalog requires that, to be admitted to the SOE, a student must "formally apply for admission to the Fairbanks elementary education program...."[8]

> The Elementary Education Program is a selective teacher education program.... Admission to UAF as a degree student majoring in education does not automatically qualify a student for admission to the Elementary Teacher Education Program. Admission to the Program is based on a comprehensive system that includes more than one measure and is used by the education faculty to assess the personal characteristics, communications, and basic skills proficiency of candidates preparing to teach.[9]

Applicants are measured on multiple factors, which are weighed and assessed by various means, and include, but are not limited to, "faculty rating forms, letters of reference, university transcripts, writing samples, and evaluations from University-sponsored practicum placements."[10]

Hunt's overall grade point average of 3.58 on a 4.0 scale exceeded the 2.7 GPA required for admission. Though he received no grades lower than a "C," Hunt's lowest grades were in his English courses. In his application for admission to his professional year, Hunt received recommendations from Pat Wise, a teacher at North Pole Elementary School who had worked with Hunt when

---

3. *Northern Alaska Envtl. Ctr. v. State, Dep't of Natural Res.*, 2 P.3d 629, 633 (Alaska 2000).

4. *Nickerson v. Univ. of Alaska Anchorage*, 975 P.2d 46, 50 n. 1 (Alaska 1999) (quoting *Szejner v. Univ. of Alaska*, 944 P.2d 481, 484–85 n. 2 (Alaska 1997)).

5. *Peter Pan Seafoods, Inc. v. Stepanoff*, 650 P.2d 375, 378–79 (Alaska 1982).

6. *Bruner v. Petersen*, 944 P.2d 43, 48 (Alaska 1997).

7. *Id.* at 49.

8. University of Alaska, Fairbanks 1996–97 Annual Catalog 79.

9. *Id.* at 81.

10. *Id.*

his daughters were in her class, and Dan File, Assistant Principal at North Pole Middle School.

Wise recommended that Hunt be admitted to the methods classes at UAF, stating that his earnestness, concern, and knowledge of typical school programs would be beneficial. However, Wise also stated that Hunt needed more experience in classrooms. She found his area of weakness to be language presentation, stating that he needed to practice correct grammatical and written skills. Because of his conscientiousness and willingness to learn and practice, Wise felt that Hunt would be able to succeed in a methods class with proper guidance so as to avoid any language hindrances.

File's recommendation was more reserved. He found Hunt to be extremely reliable and motivated, dedicated to his goal of achieving a teaching certificate, as well as a dedicated single father of three girls. File's concern centered on Hunt's ability to deal with middle school students. He felt that Hunt may be a better fit at "the intermediate grades" and that Hunt's lack of experience would work itself out in his methods classes and student teaching.

Also as part of the application process, Hunt wrote three untimed essays and one timed, extemporaneous essay. These essays, as well as the other aspects of his application, were reviewed by a three-member committee that made admissions decisions.

All three committee members ranked Hunt's interpersonal, intercultural, and professional indicators on the high end of the scale. His basic written communication/literacy skills, however, were an area of concern for the evaluators. For his extemporaneous writing sample, one evaluator circled both "marginal" and "fail," another circled between "marginal" and "fail," and the last circled "marginal." One evaluator found "weakness apparent in all areas and especially in written communications." Another found "serious writing problems—grammar, sentence structure, spelling, etc." The other evaluator found Hunt to have "writing difficulties—mechanical/grammar."

For his untimed application essays, Hunt received similar scores of marginal to fail. One evaluator was "surpris[ed] (and discourag[ed]) to find errors in essays prepared with plenty of opportunity and time to make corrections, proof-read, etc."

In their final recommendations, two evaluators did not choose between the "admit" and "reject" options, and the third chose "reject." One of the undecided evaluators stated that Praxis scores were needed before a decision could be made. The other, who placed a question mark next to each option, stated that "[w]ith writing marginal, it's important to receive Praxis scores before making a determination about methods." The final evaluator, who chose to reject Hunt, stated that "[t]his is tough—he still lacks necessary skills and knowledge for the profession—He certainly is progressing."

Ultimately, in April 1999, the SOE conditionally accepted Hunt into the Elementary Education Program. His acceptance into the methods blocks was "contingent upon passing scores on PRAXIS I, successful completion of all remaining required courses, availability of practical placements, and resources in the School of Education. In addition, the School of Education require[d] that [Hunt] attend the Writing Center to further develop and refine [his] writing skills." As noted above, Hunt failed the Praxis exam in both the spring and fall of 1999.

Although the Praxis exam was not a requirement of admission to the Elementary Education Program during Hunt's catalog year, Hunt's demonstrated weaknesses in the areas of language and communication gave UAF a justifiable reason to require that he pass the Praxis exam before admittance. The requirements state that the measures listed are merely examples that do not encompass everything the admissions committee may consider. Rather than requiring Hunt to pass the Praxis exam as a newly-created requirement to the program, the committee sought to give Hunt a chance to enter the program in spite of his weak language skills. With the Praxis exam, the committee afforded Hunt an objective opportunity to demonstrate his capacity for reading and writing.

Furthermore, the choice of the Praxis exam as this objective measure was appropriate. In July 1998, a new requirement for those seeking an initial regular teacher certificate took effect—successful completion of a competency examination by the standards established by the state.[11] The competency exam chosen by the state was the Praxis exam.[12] As such, the committee's decision to require Hunt to pass the Praxis exam as a condition of his admission to the SOE was not an abuse of discretion. Rather, it was a legitimate choice of an objective measurement of his skills that he would have been required to pass in order to be licensed in the state. Requiring Hunt to pass the exam before applying for his license merely gave Hunt an extra chance to be admitted to the program when he otherwise would have been denied admission based on his application. The university thus complied with the terms of the UAF catalog and did not abuse its discretion in conditioning Hunt's admission on his successful completion of the Praxis exam.

### B. There Is No Evidence that UAF Violated Hunt's Equal Protection Rights.

█ Hunt argues that he was treated differently than other students who had applied for admission to the SOE. Citing *Jones v. Central Peninsula General Hospital,*[13] Hunt argues that the SOE's decision to admit certain students into the Elementary Education Program while not admitting him was unlawful. He asserts that UAF has acknowledged that it is unacceptable for UAF to arbitrarily and capriciously grade students. This standard, Hunt argues, should be applied to the subjective decisions of the SOE on admissions to the professional year.

However, the record before us does not support Hunt's claim. Hunt rests his argument on a spreadsheet of test scores, majors, and GPAs. It is unclear from this spreadsheet which students were admitted to the professional year, which had successfully completed the methods block, and which were allowed to student teach. Furthermore, in regard to the students Hunt discusses in his brief, there is no indication who was admitted to the professional year or any evidence of the other aspects of their application, i.e., writing samples, evaluations, or grades. To determine whether Hunt's equal protection rights were violated, evidence would be needed of students with marginal/failing SOE applications who were admitted to the program notwithstanding a failing score on the Praxis exam. Based on this record, Hunt has failed to show that he was treated differently from students in a similar situation.

### C. Because UAF Complied with Its Catalog, We Need Not Decide Whether the Catalog Created a Contract between Hunt and UAF.

Hunt argues that UAF's policy of allowing him to pick the catalog he wanted to use to guide him through his final year created a contract. In *Bruner v. Petersen,*[14] we found that, because the University of Alaska Anchorage had complied with the provisions of the course catalog and the student handbook, we did not have to reach the question of whether the catalog and handbook resulted

---

11. AS 14.20.020(i) states, in part:

Beginning on July 1, 1998, a person is not eligible for an initial regular teacher certificate unless the person has taken and successfully completed a competency examination or examinations designated, at the time the person took the test, by the board.

12. 4 Alaska Administrative Code (AAC) 12.010(b)(5) (2002) states:

[F]or an applicant as to whom the provisions of AS 14.20.020(i) apply, the official scores on the required Praxis I: Academic Skills Assess-

ments demonstrating that the applicant meets or exceeds the following Alaska qualifying scores [for the computer based exam] on the competency examinations:
   (A) reading: 322;
   (B) writing: 321; and
   (C) math: 318.

13. 779 P.2d 783, 789 n. 6 (Alaska 1989) (recognizing that contractual covenant of good faith and fair dealing requires employers to treat similarly situated employees equally).

14. 944 P.2d 43 (Alaska 1997).

in a contract between Bruner and the University.[15]

■ The decision to admit a student to the SOE is a subjective one, involving the consideration of many factors. We have held that where matters of "academic merit, curriculum, and advancement" are concerned, university faculty and administrators should be afforded "substantial discretion."[16] "'When judges are asked to review the substance of a genuinely academic decision ... they should show great respect for the faculty's professional judgment.'"[17] Therefore, the SOE committee's decision to not admit Hunt to the SOE due to his weak writing skills, and the academic appeals committee's review of that decision, should be afforded deference. As Hunt has not presented any evidence indicating that the decision was made for a reason other than his language abilities and because we hold that UAF complied with its catalog, we need not decide whether the catalog created a contract between Hunt and UAF.

### D. UAF Did Not Violate the Alaska Statutes and UAF's Policies.

■ Hunt argues that UAF has violated several Alaska statutes and university policies and regulations by forcing him to take the Praxis exam before being admitted to the teaching program. Specifically, Hunt points to AS 14.40.170(b), which provides that the

Board of Regents may "adopt reasonable rules, orders, and plans" for the government of UAF.[18] Hunt states that UAF complied with this requirement by adopting a policy allowing students to choose any catalog in effect when enrolled as a degree-seeking student, with a seven-year limit on the catalog year.

Further, Hunt argues, the state has adopted a policy of protecting students by prohibiting misleading literature.[19] He claims this policy was violated by UAF's requirement that he take the Praxis exam. Hunt also argues that UAF violated AS 14.48.060(b)(4)[20] by changing his graduation requirements and that he would not have enrolled had he known this was going to happen.

UAF's requirement that Hunt take the Praxis exam before admitting him to the Elementary Education Program was not an additional requirement that was misleading to Hunt or a changing of the requirements Hunt needed in order to graduate from UAF. Rather, the requirement of the Praxis exam was an alternative measure the committee employed to give Hunt a chance to enter the program because without it he would have been denied admission. Instead of changing requirements in the middle of his UAF career, therefore, UAF gave Hunt an extra, alternative opportunity to fulfill the established requirements for entry into the teaching program.

15. *Id.* at 48.

16. *Id.*

17. *Id.* (quoting *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985)).

18. AS 14.40.170(b)(1) provides, in part:
   The Board of Regents may adopt reasonable rules, orders, and plans with reasonable penalties for the good government of the university and for the regulation of the Board of Regents....

19. AS 14.48.010(a)(4) provides, in part:
   It is the purpose of this chapter to provide for the protection, education, and welfare of the citizens of the state, its postsecondary educational institutions, and its students, by

   . . . .
   (4) prohibiting misleading literature, advertising, solicitation, or representation by educational institutions or their agents....

20. AS 14.48.060(b)(4) states, in part:
   [T]he institution provides a catalog or brochure containing information describing the programs offered, program objectives, length of program, schedule of tuition, fees, and all other charges and expenses necessary for completion of the course of study, cancellation and refund policies, and other material facts concerning the institution and the program or course of instruction that are reasonably likely to affect the decision of the student to enroll, together with any other disclosures specified by the commission by regulation; and this information is provided to prospective students before enrollment....

### E. The Superior Court Did Not Err in Awarding UAF Attorney's Fees.

 Hunt challenges the superior court's order that he pay $3,000 in legal fees to UAF. He argues that the award of attorney's fees is based on the superior court's finding that UAF did not act arbitrarily or capriciously and did not breach a contract with Hunt. As this finding by the court was incorrect, Hunt argues, the award of attorney's fees should be reversed.

Hunt does not, and could not, dispute that UAF was the prevailing party in the action, instead basing his appeal on the claim that the superior court erred in its underlying decision and therefore erred in its award of fees. In the superior court, Hunt did not offer any other reason to deny fees to UAF. Rather, in his opposition motion to UAF's fee request, Hunt argued that the trial court should apply the standard of Civil Rule 82, providing for an award of thirty percent of reasonably and necessarily incurred costs and fees.

Attorney's fees were awarded in this case pursuant to Alaska Rule of Appellate Procedure 508(e).[21] Such fees should only partially compensate a party for its fees.[22] In awarding fees, a court may exercise its sound discretion in making awards that are justified and reasonable.[23] While Hunt argued to the superior court that if fees were to be awarded, no more than $4,779 should be granted, the superior court only awarded UAF $3,000. Because Hunt offered no other reason, either before us or the court below, for challenging the award, we affirm the superior court's award of attorney's fees.

## V. CONCLUSION

Because UAF complied with its catalog requirement when it required Hunt to pass the Praxis exam before admitting him to the Elementary Education Program, and because the court awarded UAF fees less than the amount suggested by Hunt, we AFFIRM

21. Alaska Rule of Appellate Procedure 508(e) provides:

Attorney's fees may be allowed in an amount to be determined by the court.... If the court determines that an appeal or cross-appeal is frivolous or that it has been brought simply for

the decision of the superior court in all respects.

purposes of delay, actual attorney's fees may be awarded to the appellee or cross-appellee.

22. *Carr–Gottstein Props. v. State*, 899 P.2d 136, 148 (Alaska 1995).

